UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

CIVIL ACTION NO: 04-11934-GAO

NOAH GREENBERG,         )
    Plaintiff              )
                        )
v.                      )
                        )
TOWN OF FALMOUTH and    )
GANNETT FLEMING, INC.,  )
    Defendants             )

### DEFENDANT GANNETT FLEMING'S RESPONSES TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

Pursuant to Fed.R.Civ.P. 33(a), defendant and third-party plaintiff Gannett Fleming, Inc. ("Gannett" or "GF"), through its counsel of record, hereby responds to the first set of interrogatories propounded by plaintiff Noah Greenberg ("plaintiff").

### OBJECTIONS TO INSTRUCTIONS

Gannett objects to the instructions in plaintiff's interrogatories to the extent that they are overly broad or unduly burdensome; to the extent that they violate applicable privileges; and to the extent that they seek to impose obligations on Gannett than are greater than those contained in the applicable Rules of Civil Procedure or are beyond the scope of discovery permitted by those Rules. Gannett also objects to certain instructions as vague and ambiguous, and may not be able to provide the requested "complete description" of a document that does not exist (Instruction 3).

### GENERAL OBJECTIONS TO DISCOVERY REQUESTS

1.    Gannett objects to these discovery requests to the extent that they are overly broad or unduly burdensome. Gannett reserves his rights under the applicable Rules of Civil Procedure to produce its business records in lieu of answering particular interrogatories in detail, per Rule 33(d).

2.    Gannett objects to these discovery requests to the extent that they are vague or their language is ambiguous.

00067734.DOC

3.  Gannett objects to these discovery requests to the extent that they seek information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, and to the extent that they are beyond the permissible scope of discovery under the applicable Rules of Civil Procedure.

4.  Gannett objects to these discovery requests to the extent that they violate the attorney-client privilege.

5.  Gannett objects to these discovery requests to the extent that they violate work-product protections.

6.  Gannett objects to these discovery requests to the extent that they violate trade secret protections or compromise internal confidential, proprietary information.

7.  Gannett objects to these discovery requests to the extent that they call for publicly available information and/or documents that are equally available to plaintiff.

8.  Each of the specific responses of Gannett to these discovery requests is made subject to, and without waiving, these General Objections as well as Gannett's Objections to Instructions. Each of the foregoing objections and limitations is incorporated into each of the following responses, regardless of whether or not it is repeated below.

## INTERROGATORY RESPONSES

### INTERROGATORY NO. 1

Identify by name, title or position, employer, residential address and business address, the person responding to these interrogatories.

### ANSWER NO. 1

Jeffrey Alberti, Gannett Project Manager for the subject job, is responding to these interrogatories, with the assistance of counsel. The contracting party on this job was Gannett Fleming Engineers & Architects P.C. Gannett's and Alberti's business address is 150 Wood Road, Braintree, MA 02184.

### INTERROGATORY NO. 2

Identify the persons most knowledgeable of the defendant Gannett Fleming's conception, development, preparation and completion of plans and/or design drawings for

the public works maintenance facility.

**ANSWER NO. 2**

From Gannett Fleming, VP Donald Nicholas, Project Manager Jeff Alberti, Project Architect Carl Campagna, principal Michael Haire, Structural Engineer Paul D. Smith, Civil Engineer Paul W. Smith, and CAD Drafter Rob Gumlaw; from the Town of Falmouth, William Owen, Frank Duffy, Ed DeWitt; for plaintiff, Noah Greenberg and possibly copyright attorney Thomas Kahrl. As to sub consultants, Dennis Blais of Architectural Engineers, Inc. of Boston worked on the mechanical, electrical, plumbing, and fire protection drawings; Richard DeCoste of Woodbrier Associates, Inc., of West Roxbury assisted Gannett with final construction documents. Further responding to this interrogatory, Gannett refers plaintiff to its initial document production pursuant to Rule 26(a)(1).

**INTERROGATORY NO. 3**

Describe how the plaintiff's plans were provided to Gannett Fleming as alleged at paragraph 4 of Gannett Fleming's Cross-Claim Against Falmouth for Contractual Indemnification, and Contribution, where Gannett Fleming states: "Gannett Fleming and Falmouth also have a special relationship as to this particular project, based on Gannett Fleming's reliance on Falmouth's provisions of plaintiff's plans...." Include in the answer to this interrogatory a description of the plans provided, the date provided, how provided, and by whom provided, including the name, occupation, and title of the person providing the plans.

**ANSWER NO. 3**

Gannett first received copies of the Greenberg plans on 6/11/01, in the mail from

3

the Town, in response to the Town's RFQ. The subject plans were attached to the RFQ as Appendix A.

**INTERROGATORY NO. 4**

Describe fully the "statements" to which Gannett Fleming refers at paragraph 4 of Gannett Fleming's Cross-Claim Against Falmouth for Contractual Indemnification, and Contribution, where Gannett Fleming states: "Gannett Fleming and Falmouth also have a special relationship as to this particular project, based on Gannett Fleming's reliance on Falmouth's provisions of Plaintiff's plans and on statements that Plaintiff's plans should be reviewed in making new plans for the subject job." Include in the answer to this interrogatory the person or persons making such statements, the exact words of the statements, to whom the statements were made, when and where made, and how communicated.

**ANSWER NO. 4**

At an initial meeting called by the Town with various engineering and architectural firms, on 6/5/01, the Town representative indicated that the Town had existing preliminary plans, and although it wanted new ideas, at that time it did not want plans too different from the existing plans. Ultimately, the final plans were radically different from the existing plans. In its RFQ, the Town indicated that architectural firms should review the existing plans. The Scope of Services in the contract between Gannett and the Town, states that Gannett should review the 1994 Greenberg plans. At the 1/28/02 meeting between Gannett and the Town, Gannett expressed reservations concerning the Greenberg plans, and Town representative Bill Owen stated it was *not* necessary to follow the existing preliminary plans at that time. At a meeting between

Gannett and the Town on 9/12/02, Gannett raised several aspects of the Greenberg plans that it considered inadequate, inappropriate, or too costly, and told the Town representatives that Gannett did *not* want to use the Greenberg plans for this job. At that 9/12/02 meeting, the Town agreed that Gannett would not be required to use the Greenberg plans for the job. Further responding to this interrogatory, Gannett refers plaintiff to its initial document production pursuant to Rule 26(a)(1).

**INTERROGATORY NO. 5**

Describe fully the "reliance" to which Gannett Fleming refers at paragraph 4 of Gannett Fleming's Cross-Claim Against Falmouth for Contractual Indemnification, and Contribution, where Gannett Fleming states: "Gannett Fleming and Falmouth also have a special relationship as to this particular project, based on Gannett Fleming's reliance on Falmouth's provisions of Plaintiff's plans and on statements that Plaintiff's plans should be reviewed in making new plans for the subject job." Include in the answer to this interrogatory the acts Gannett Fleming took in reliance on the Town's provision of the plaintiff's plans and on the statements the town made; the date of such acts of reliance; the person to act in reliance, including name, occupation, and title.

**ANSWER NO. 5**

The Town included the Greenberg plans in its RFQ, although Gannett did not request or require the Town to include any existing plans. The contract between Gannett and the Town was based on the Town's RFQ Scope of Services, and the Scope of Services in the contract echoed the Town's language that instructed the architectural firm to review the existing preliminary plans and building plans. Ultimately, Gannett did not use or rely on the Greenberg plans in its final design/drawings.

**INTERROGATORY NO. 6**

Describe fully the "review[]" Gannett Fleming made of the plaintiff's plans "in making new plans for the subject job" as alleged at paragraph 4 of Gannett Fleming's Cross-Claim Against Falmouth for Contractual Indemnification, and Contribution, where Gannett Fleming states: "Gannett Fleming and Falmouth also have a special relationship as to this particular project, based on Gannett Fleming's reliance on Falmouth's provisions of Plaintiff's plans and on statements that Plaintiffs plans should be reviewed in making new plans for the subject job." Include in the answer to this interrogatory the review(s) made, the date(s) of such review(s), and identify the person(s) making such review(s).

**ANSWER NO. 6**

Gannett objects to this interrogatory as misleading to the extent that the interrogatory indicates that Gannett Fleming made a review of plaintiff's plans, relying on language in Gannett's cross-claim that statements were made that "plaintiff's plans *should be reviewed...*" (emphasis added). Subject to and without waiving this objection and the General Objections incorporated from above, Gannett points out that the preliminary plans were relatively generic, did not specify materials, did not fully specify dimensions, and did not detail elevations. That said, Jeff Alberti looked at the Greenberg plans (as instructed by the Town), but did *not* approve of them. GF identified several potential problems with the existing preliminary design documents including building code issues, inadequate space, inefficient operations, and expensive construction. Some of these issues were discussed with the Town during the fee negotiations on 1/28/02. At the 1/28/02 meeting with the Town, Alberti expressed certain concerns that he had about

the Greenberg plans to Town representative Bill Owen, and stated that certain aspects would be too costly. Gannett recommended that the Town consider alternate designs, which the Town agreed to at the 1/28/02 meeting. The Town stated that it was not necessary to design a building per the existing preliminary plans: Owen told Alberti it was not necessary to go with the existing preliminary plans.

Upon executing a contract with the Town, GF prepared a Project Execution Plan (PEP), issued in April 2002. At that time of the PEP preparation, GF was of the opinion that the existing plans were not of any use in preparing the design documents for the new Maintenance Facility because of building code issues, apparent lack of space, high construction value of the recommended program, and general inefficient space layout and operations. Consequently, GF revised Task 1 in its Scope of Services in the PEP to remove the review and evaluation of the preliminary design documents.

GF attended a meeting with the Town of Falmouth on 4/3/02. It was agreed that the first 30 days of the schedule would consist of space programming including determining the types of spaces, quantity of spaces, size of spaces, and layout of spaces. After determining the Town's needs, GF developed several new building alternatives for the DPW additions. These alternatives included an administration/shop addition, a vehicle/equipment storage garage and wash bay, and minor renovations to the existing Maintenance Facility. Due to site constraints, the Town's desire to continue utilizing the existing maintenance facility, and the Town's recommendations pertaining to space adjacencies and site utilization, the administration/shop addition was located to the east of the existing structure and the vehicle storage garage portion was located to the west of the existing structure. Additions to the north and south of the existing structure were not

reasonable due to the proximity of the property line to the south and a steep slope to the north. The administration addition was located on the east side, the side closest to Gifford Street, to allow the most direct path for public access. The vehicle storage garage portion was located to the west side, away from the administration areas. The Town selected a preferred alternative from these several alternatives. The preferred alternative was further modified and refined by the Town to obtain the Town's preferred adjacencies.

Subsequently, at the 9/12/02 meeting with the Town, Alberti listed seven areas of deficiencies in the existing plans, and told Town representative Bill Owen that he wanted not to use these plans. Owen agreed that Gannett did not have to use the Greenberg plans, and after 9/12/02, all plans were developed from scratch by Gannett. Further responding to this interrogatory, Gannett refers plaintiff to its initial document production pursuant to Rule 26(a)(1).

**INTERROGATORY NO. 7**

Describe fully all uses to which the plaintiff's plans were put "in making new plans for the subject job" as alleged at paragraph 4 of Gannett Fleming's Cross-Claim Against Falmouth for Contractual Indemnification. Include in the answer to this interrogatory the date of such uses and the persons making use of the plaintiff's plans.

**ANSWER NO. 7**

Gannett *never* used the Greenberg plans to make its own (Gannett's) plans for this job. As described above, before the 9/12/02 meeting with the town, Gannett (Alberti) reviewed the preliminary plans, but decided not to use them for its own plans. As also

the back of the building. Further responding to this interrogatory, Gannett refers plaintiff to its initial document production pursuant to Rule 26(a)(1).

**INTERROGATORY NO. 10**

Describe in detail Gannett Fleming's formulation, preparation, and completion of plans and/or design drawings ("plans") for the public works maintenance facility project, including but not limited to the concepts for such plans, a description of the various plans Gannett Fleming created, all plans preliminary to the various final plans prepared and submitted, all revisions made to such plans, the dates of the preparation of various preliminary and final plans, and identify the persons to prepare all such various plans and the plans each prepared. As used in this interrogatory, "various plans" shall mean different plans included in a set of construction drawings, including floor plans, elevations, construction drawings, and the like.

**ANSWER NO. 10**

After the 9/12/02 meeting between Gannett and the Town, Gannett was freed from referring to the preliminary plans (see above). By November of 2002, Jeff Alberti had programmed and drafted Gannett's initial plans, which plans were presented to the Town at a 12/3/02 meeting. Alberti created several new alternate plans in January 2003, and the Town chose its preferred plan(s) from these on 1/17/03. On 2/19/03, the Town modified these preferred plans slightly. All of these aforementioned plans were floor plans and site plans. On 2/24/03, three different building elevation plans were created and submitted to the Town. Sometime between 1/17/03 and 3/31/03, Gannett modified the Town's preferred plan into several alternates. The Town approved the final floor plan, done by Jeff Alberti, on 3/31/03. After that, the parties worked on design

development and town funding. Gannett's final drawings were completed on 6/18/04. The architectural, civil, and structural drawings/plans were done by Gannett, from scratch, with assistance from Woodbrier. The mechanical, electrical, plumbing, and fire protection plans/drawings were done by AEI between January 2003 and June 2004. Further responding to this interrogatory, Gannett refers plaintiff to its initial document production pursuant to Rule 26(a)(1).

**INTERROGATORY NO. 11**

To the extent that Gannett Fleming's floor plan designs for the public works maintenance facility project reflect office spaces with interior walls at 45° angles, as grossly depicted below, identify who conceived this design for use in the public works maintenance facility project, when, and how, and indicate whether any documents contributed to the conception.

**ANSWER NO. 11**

The design feature of having a 45° angle on one of the corners of a building is a widely accepted and common way to open up spaces. The Gannett office itself uses 45° angled walls, since before Jeff Alberti started working there in 1992. Alberti also recalls such a feature being used in Gannett jobs (other than the Falmouth DPW facility) (1) for Gannett's renovations of its own offices in Braintree, MA, and (2) in a public works facility project for the Town of Bedford, MA.

**INTERROGATORY NO. 12**

Describe fully all facts upon which Gannett Fleming relies in support of the Defendant's Affirmative Defenses numbered 4 as set forth in the Answer by Defendant

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

CIVIL ACTION NO. 04-11934-GAO

| | |
|---|---|
| NOAH GREENBERG<br>    Plaintiff<br><br>v.<br><br>TOWN OF FALMOUTH,<br>AND GANNETT<br>FLEMING, INC.,<br>    Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**DEFENDANT GANNETT FLEMING'S RESPONSES TO PLAINTIFF'S
SECOND SET OF INTERROGATORIES**

Now comes defendant and cross-plaintiff Gannett Fleming Engineers and Architects, PC ("Gannett" or "GF"), through its counsel of record, and hereby responds to the second set of Interrogatories from plaintiff Noah Greenberg ("Plaintiff" or "Greenberg"), pursuant to Rule 33.

**OBJECTIONS TO INSTRUCTIONS**

Gannett objects to the instructions in plaintiff's interrogatories to the extent that they are overly broad or unduly burdensome; to the extent that they violate applicable privileges; and to the extent that they seek to impose obligations on Gannett than are greater than those contained in the applicable Rules of Civil Procedure or are beyond the scope of discovery permitted by those Rules. Gannett also objects to certain instructions as vague and ambiguous, and may not be able to provide the requested "complete description" of a document that does not exist (Instruction 3).

**GENERAL OBJECTIONS TO DISCOVERY REQUESTS**

1. Gannett objects to these discovery requests to the extent that they are overly broad or unduly burdensome. Gannett reserves his rights under the applicable Rules of Civil Procedure to produce its business records in lieu of answering particular interrogatories in detail, per Rule 33(d).

00077997.DOC

1

**INTERROGATORY NO. 23**

Itemize all amounts Gannett Fleming has received relative to design services or construction supervision services or otherwise from the Town of Falmouth or any other person or entity relative to services Gannett Fleming provided in connection with the public works maintenance facility project.

**ANSWER NO. 23**

Gannett incorporates herein by reference, as if fully set forth, its previous responses to plaintiff's Interrogatory No. 18. Further responding: To date, the Gannett Fleming Project Team has received payments from the Town of Falmouth totaling $357,400 for the project (including labor, expenses, and reimbursements for charges by Gannett's subconsultants). Of this $357,400, Gannett Fleming received $258,154.60 for its own labor/services rendered. The remaining balance of $99,245.40 is for direct expenses and charges by subconsultants. Gannett Fleming does not mark up charges by subconsultants or direct expenses; therefore, Gannett Fleming received no profit on these services. The $258,154.60 paid to Gannett Fleming for it own labor/services, does not represent its profit on the job. Gannett Fleming's agreement with the Town includes a total labor fee for the project of $271,706. The maximum total profit that Gannett could realize on this job would be 10 percent of the $271,706 ($27,171), but the profit could be as little as zero; the profit margin is not determined until the end of the job.

**INTERROGATORY NO. 24**

Itemize all expenses Gannett Fleming incurred in providing design services or construction supervision services or other services related to the public works maintenance facility project.

00077997.DOC

4