UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

CIVIL ACTION NO. 04-11934-GAO

NOAH GREENBERG )
    Plaintiff )
)
v. )
)
TOWN OF FALMOUTH, )
AND GANNETT )
FLEMING, INC., )
    Defendants )

**GANNETT FLEMING'S SEPARATE STATEMENT OF DISPUTED AND UNDISPUTED FACTS, IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, AND IN SUPPORT OF GANNETT FLEMING'S CROSS-MOTION FOR SUMMARY JUDGMENT**

Now comes defendant and cross-plaintiff Gannett Fleming Engineers and Architects, PC ("Gannett" or "GF"), through its counsel of record, and hereby submits the following Separate Statement of Disputed and Undisputed Facts, in support for Gannett's Opposition to the Motion for Summary Judgment by Plaintiff Noah Greenberg ("plaintiff" or "Greenberg"), and in support of Gannett's Cross-Motion for Summary Judgment, pursuant to U.S. District Court Local Rule 56.1. Documentary exhibits and referenced excerpts from deposition transcripts are attached as Exhibits hereto.

**I.**    **Gannett's Responses to Plaintiff's Purportedly Undisputed Material Facts**

The following are Gannett's responses to plaintiff's Statement of Undisputed Material Facts, by corresponding paragraph numbers.

1.    Undisputed, although the cited testimony does not use the word "antiquated."

2.    Undisputed.

00079134.DOC

1

3. Undisputed that in 1993 the Town of Falmouth solicited design services for renovation of its DPW maintenance facility building, although not clear from the cited testimony that Falmouth envisioned "expansion" of this building at the time.

4. Undisputed.

5. Undisputed.

6. Undisputed that *either* plaintiff Noah Greenberg *or* the Robert Charles Group ("RCG") submitted a proposal in response to the Town's Request for Proposals. Greenberg's relationship to RCG is not clear at this time. Greenberg testified that at the same time he was a partner in Jacobs & Greenberg, he was affiliated with RCG, Greenberg Depo. pp.11-12 [cited Greenberg deposition pages at Exhibit B]. He described RCG as an "affiliated group of architects and engineers that were joint-ventured on projects at the same time with Jacobs & Greenberg. We would joint-venture sometimes with that group." Id. First Greenberg testified that he was a "principal" of RCG, but he was not sure if he was a "partner" (id. p.12); later he testified that he was a "partner" of RCG (id. p.71). The entity with which the Town contracted in 1993 for a set of preliminary plans, was RCG. Id. pp.68-69 & Exhibits 4 & 5.

7. Undisputed that plaintiff has accurately quoted from the cited Greenberg Exhibit 5.

8. Undisputed that Greenberg prepared the subject plans (at Exhibits 15A-15C to the Falmouth deposition). Disputed that "the design was entirely Mr. Greenberg's"; certain aspects of the design were dictated by the site or by the Town of Falmouth's express requirements. Falmouth Depo. pp.42-43, 79-80, 91 [cited Falmouth deposition pages at Exhibit C]; Greenberg Depo. pp.53-56.

9. Undisputed.

10. Undisputed.

11. Undisputed that Greenberg's three preliminary drawings "depicted the existing building and additions as the same would sit on the site," but disputed that other Greenberg depictions of his proposed additions were depicted as they would sit on the site.

12. Generally undisputed. Falmouth's designated deponent William Owen testified that he approved the preliminary Greenberg plans at the time (Falmouth Depo. p.26) and that the department heads "reacted favorably just to get a new facility," although the funding for that facility was not available at the time (id. p.48), so any such approval was moot.

13. Undisputed that this is an accurate quote from Exhibit 2 to the Falmouth deposition.

14. Partly disputed. Undisputed that Greenberg's preliminary plans "were to be provided to Town officials for their consideration," but disputed that the plans were not to be distributed to others. As (correctly) quoted in this paragraph, the Town's designated deponent testified that the plans were not to be distributed to anybody other than the Town representatives "at that particular time." Falmouth Depo. p.26:6. Similarly, Greenberg testified that he did not "get the impression" or "have that opinion" that copies of his preliminary plans would be distributed outside the Falmouth DPW. Greenberg Depo. p.119. The Town subsequently distributed Greenberg's preliminary plans with its 2001 Request for Qualifications, Architectural Design Services (Exhibit 12 to Falmouth Depo. pp.64 & 68). The Town's distribution of these preliminary plans with

its Request for Proposals was prior to Gannett's involvement with this project.

15. Undisputed.

16. Undisputed that the project suffered from lack of public funding between 1994 and 2001. Disputed that plaintiff's part/role in that project was "stalled" as opposed to being over. In fact, plaintiff was hired for a discrete portion of the project, for a limited fee of $7,800 or $8,000, to do the subject preliminary drawings; after this task had been accomplished, plaintiff had no further role in the project. Falmouth Depo. pp. 62-63; *see* Greenberg Depo. pp.68.

17. Undisputed that Greenberg provided the Town with a preliminary construction cost estimate in 1998, which cost estimate the Town's designated deponent described as "very preliminary." Falmouth Depo. p.59. As far as Mr. Owen and Mr. Greenberg discussing this cost estimate, Owen testified "I am sure we had a discussion somewhere along the line," but he could not recall the substance of any such discussion with Greenberg. Id.

18. Undisputed.

19. Undisputed.

20. Undisputed that in 2000, Mr. Owen anticipated that he would seek Town funding for the project and requested that Mr. Greenberg provide additional copies of his preliminary plans. However, disputed that Owen discussed using these plans to seek funding with Greenberg (Owen Depo. pp.85:15, 86:13) or that Owen's sole purpose in obtaining the copies was to seek additional funding (*see* id. 85:9, 86:20). Further, it is undisputed that Owen shortly thereafter included Greenberg's preliminary plans in Falmouth's Request for Proposals (id. p.68). Although this paragraph correctly, but

selectively, quotes Greenberg's letter, Owen testified that he did not know what Greenberg meant by the quoted language (id. 86:20).

21.   Undisputed that Owen and Greenberg never discussed continuation of the project or further use of Greenberg's preliminary plans, one way or the other. Undisputed that the Town never told Greenberg that his plans would be used for the next phase of the project or that he would be the designer for the next phase of the project. Falmouth Depo. pp.132-133, 138, 144-145, 153.

22.   Disputed. Undisputed that Owen prepared and published Falmouth's Request for Qualifications, Architectural Design Services, but disputed that he was "seeking basically, completion of Mr. Greenberg's preliminary drawings." Deposition of Gannett Fleming designee Jeff Alberti ("Gannett Depo.") pp.83-84 [cited Gannett deposition pages at Exhibit D]; Falmouth Depo. p.141.

23.   Undisputed that Greenberg's preliminary drawings were attached to Falmouth's Request for Qualifications, Architectural Design Services in 2001. Disputed that this attachment was "done without Mr. Greenberg's permission." In fact, the Town's designee testified that he did not know any permission was needed from Greenberg for the Town to copy his preliminary plans (Falmouth Depo. p.147). Further, plaintiff gave Falmouth his explicit permission to copy his plans in his 2/7/00 letter to Bill Owen (Exhibit 16 to Falmouth Depo.).

24.   This paragraph correctly quotes the 6/18/01 letter from plaintiff Greenberg to Falmouth's Bill Owen, at Exhibit 18 to the Falmouth Depo. It is undisputed that this letter was sent and received, although the allegations contained therein are vigorously disputed.

25. Undisputed that the Town representative(s) said something to this effect at the 6/5/01 initial meeting. However, the Town later changed its position and permitted Gannett to develop, from scratch, plans very different from Greenberg's preliminary plans. Falmouth Depo. pp.141-142, 146, 148; Gannett Depo. pp. 133, 160-161, 191-193.

26. Undisputed that the Town requested a second floor, when working on the job with Gannett.

27. Undisputed.

28. Undisputed that this paragraph correctly, although selectively, quotes from Exhibit 8 to the Gannett deposition, the 1/30/02 Scope of Services submitted for the subject job [GF 00423]. However, as testified to extensively by Gannett's designated deponent, Jeff Alberti (Gannett Depo. pp.160-161), Gannett did not end up modifying Greenberg's preliminary plans, and did not end up even using these plans--regardless of what this form Scope of Services states before Gannett had done its first plans for the subject job. *Accord,* Gannett's answers to plaintiff's interrogatory Nos. 4, 6, 7, 10, 17.

29. Disputed. As set forth in the preceding paragraph, while the "preliminary plans" referred to in the 1/30/02 Scope of Services were the Greenberg plans, Gannett did not end up modifying these plans, but rather designed its own plans for the job from scratch. Gannett Depo. pp.160-161; Gannett's responses to plaintiff's interrogatory Nos. 4, 6, 7, 10, 17. Undisputed that the Town provided Greenberg's preliminary plans as a part of its June 2001 Requests for Qualifications.

30. Disputed. Plaintiff has added, albeit in brackets, the phrase "After modifying preliminary plans..." This is not correctly quoted from the 1/30/02 Scope of Services at Exhibit 8 to the Gannett deposition. The remainder of the quote in this

paragraph is correct, although selective, from that same document. Where the quote shows a three-dot ellipsis, nearly a page from the original is missing.

31.  It is undisputed that Greenberg's preliminary plans contained the measurement of 29,000 +/- square foot storage area and for a 3,000 +/- square-foot office space addition. Also undisputed that Gannett's initial Scope of Services, from January 2002, adopted these two square-foot measurements, for convenience because this was the only information available at the time, Gannett Depo. pp.76-77, 115-116. However, this fact, while undisputed, is immaterial to this Motion, because Gannett shortly thereafter designed its own additions with very different square footage. In fact, Gannett's new structure ended up being 43,220 +/- in square footage, while Greenberg's new structure on his plans was only 32,600 +/- in square footage. Gannett's responses to plaintiff's interrogatory No. 17.

32.  Disputed. The design elements were different in the contract between the Town and Gannett, even in the initial contract at Exhibit 21 to the Falmouth deposition. For the square-footage measurements, the Town and Gannett adopted the only available measurements, which were approximations--the measurements initially referenced in the preceding paragraph. But these measurements and the design features changed significantly after this contract between the Town and Gannett of 3/2002. Falmouth Depo. pp.104-109; Gannett Depo. pp.160-161, 176.

33.  Undisputed that Gannett Fleming received the 6/7/02 letter from plaintiff's counsel, and undisputed that this paragraph correctly paraphrases that letter, although the accuracy of the letter's contents is vigorously disputed. Further, the phrase "it is perhaps significant" raises a question of law, and is therefore inappropriate in the Facts.

34. Undisputed.

35. The phrase in this paragraph "demolition of the existing building" is misleading, or at least confusing. Undisputed that Gannett Fleming asked the Town to change its plan for selective or partial demolition of partial of the office building. Falmouth Depo. pp. 109-111; Gannett Depo. pp. 134-135. Disputed, however, that the quoted portion from the March 2002 Scope of Services ended up controlling Gannett's design for the project. Gannett Fleming did program the addition to the (front) office/administrative space in such a way that the existing building corridor would not need to be moved -- that is in such a way that this aspect of the design was not "structurally isolated." Gannett Depo. pp. 139-140.

36. This paragraph is worded in a misleading, or at least confusing fashion. Undisputed that the Town approved of the floor plan at Exhibit 27 to the Gannett Deposition on or around 3/31/03. However, this plan cannot be characterized as the "final floor plan," as in the plaintiff's paragraph here. This ignores testimony by the Gannett designated deponent and others, that the floor plan and other aspects of the design of this job changed after this date. Gannett Depo. pp. 169-171, 196-197. The plan at Exhibit 27 "doesn't appear to have a scale on it," so Gannett's deponent, Jeff Alberti, was "not sure how they would know the dimensions of this plan" (id. 170:17-19). Alberti testified that he could not tell if this was "the plan the Town was satisfied with," responding that he would have to "compare to the existing plan to see if it is the final plan that was used" (id. 170:24-171:3). Further, "the Town did approve of changes to the floor plans throughout the design development and final design phase" (id. 171:7-9). Alberti further testified that "these plans are further developed during the design

development phase, which was conducted after 3/31/03... [and] the final drawings were completed on 6/18/04. So that was the preferred concept. And then the plans are further refined during design development through final design... *** This is the final concept that they approved that was still subject to minor modifications as the design development plans were prepared." Id. 197:8-21.

37. Disputed that the final floor plans were approved on 3/31/03, as discussed in the previous paragraph. Undisputed that on 4/1/03 Gannett Fleming requested, and subsequently obtained, the Town's agreement to indemnify Gannett Fleming for any losses resulting from Gannett's infringement (if any) of Greenberg's copyrights. *See* Falmouth Depo. p.144 (Town's DPW Director William Owen had the authority to sign contracts on this job, once the Selectman had approved the project); pp. 150-151 (Owen was fully aware of the 4/1/03 letter's contents, including the indemnification demand, and that by signing this letter, he was committing the town to what the letter requested, including the indemnification.

38. Disputed as stated. If plaintiff means the 3/31/03 preliminary floor plan at Exhibit 27 to the Gannett Fleming deposition (discussed above in ¶36) by the "subject floor plan," then this floor plan *was* created sometime after November 2002. Also, undisputed that Gannett received notice of Greenberg's reservation of rights in his plans in the 6/7/02 letter from Greenberg's counsel. Disputed that the pages cited in this paragraph stand for any of these dates.

39. Disputed as stated. Undisputed that, if this paragraph refers to the preliminary hand-drawn floor plan of 3/31/03 at Exhibit 27 (*see* ¶36 above), this floor plan was prepared by Gannett Fleming. Undisputed that Gannett Fleming subcontracted

creation of some of the formal architectural floor plans to Woodbrier Associates. Gannett Depo. p.160. But it is not clear from the record whether Woodbrier prepared plans from the particular drawing at Exhibit 27 to the Gannett deposition. Woodbrier did not prepare *all* the final floor plans for the job (id. 160:6), and because the drawing at Exhibit 27 had no "scale on it," it is unclear how Woodbrier would have known "the dimensions of this plan" (id. 170:13-19) so as to use it for this purpose.

40. Undisputed.

41. Disputed. The quote from the Falmouth deposition (116:8-14) has been taken out of contexts and mischaracterized in this paragraph. Falmouth's designated deponent was being questioned about Exhibit 22 to the Falmouth deposition, Amendment No. 1 to the job, which provided additional compensation to Gannett for additional services – mainly construction supervision, inspection, and management – assumed in June 2004. During this discussion, Falmouth's deponent William Owen was asked about the changes in "size" referenced in this document. Part of his response was that "there were reconfigurations of the building, the original preliminary plans." Id. 116:8-14. It is not clear that the "preliminary plans" here are Greenberg's plans, but even if that is what Owen was referring to, Owen did not testify that Gannett took Greenberg's preliminary plans and simply reconfigured them into Gannett's own final plans; to the contrary, Owen testified repeatedly that Gannett's plans were significantly different from Greenberg's plans. Falmouth Depo. pp. 148, 150, 151. For these various reasons, Gannett disputes the wording of this paragraph, that Gannett reconfigured plaintiff's preliminary plans.

42. Undisputed that Gannett has received "hundreds of thousands of dollars" for its design and construction management services, in gross revenues, on this job.

00079134.DOC

10

However, Gannett's total profit (which will not be determined until the end of the job) could be as much as about $27,000, and could be as little as zero. Gannett's answer to plaintiff's second set of Interrogatories, No. 23 (at one of plaintiff's exhibits). Undisputed that the Town has agreed to indemnify Gannett Fleming for any losses to Gannett Fleming resulting from Gannett's "infringing activity" (if any). *See* ¶37 above.

43.  Undisputed that this paragraph correctly characterizes plaintiff's contentions herein, and correctly quotes from ¶17 of plaintiff's Complaint. The contentions themselves are vigorously disputed.

44.  Undisputed that Gannett cross-claimed against Falmouth in this case. Also undisputed that plaintiff has correctly quoted from ¶4 of Gannett's cross-claim against Falmouth. Further answering, as discussed more fully in Gannett's Opposition Memorandum, Gannett is entitled (as is any litigant) to plead in the alternative; Gannett's cross-claim against the Town says in effect that Gannett denies liability to plaintiff, but in the alternative, *if* Gannett is found liable to plaintiff, then Gannett will look to the Town to indemnify Gannett or to contribute its pro rata share to any recovery by plaintiff. *See also* F.R.C.P. 13(g); Gannett's response to plaintiff's Interrogatory Nos. 4-6.

45.  Undisputed that plaintiff has correctly, although selectively, quoted one name of a long list of names in Gannett Fleming's response to plaintiff's interrogatory No. 2. This interrogatory asked for the "persons most knowledgeable" concerning the factual allegations/issues in the case, and Gannett's answer listed first those persons from Gannett, next those persons from the Town, next those persons from plaintiff's side of the case, and then subconsultants of Gannett and their personnel. Gannett's response was

00079134.DOC

11

intended to provide as complete a list as possible of persons with knowledge concerning the allegations in the lawsuit, but was in no way intended to imply that Greenberg had knowledge of Gannett Fleming's architectural plans because those plans were actually Greenberg's preliminary plans in disguise. Thus, Gannett does not dispute its inclusion of Noah Greenberg in its list of "persons most knowledgeable," but vigorously disputes the false inference that plaintiff is attempting to draw from this inclusion.

## II.    Gannett Fleming's Additional Undisputed Facts

In addition to the Disputed and Undisputed Facts discussed above, Gannett Fleming lists the following Undisputed Facts:

46.    On the subject Falmouth DPW job in Falmouth, Gannett Fleming's total square footage of new structure was slightly more than 43,000 square feet, whereas Greenberg's square footage for floor area of new structure measured approximately 32,000 square feet. Gannett's response to plaintiff's Interrogatory No. 17; Greenberg Depo. p.25. As to the new administration building construction in the front of the job, GF's total construction is 350 percent larger than plaintiff's plan indicated, and 200 percent larger if the second floor of the administration building that GF added is not included.

47.    The two sets of plans (Gannett's and Greenberg's) for the DPW job in Falmouth, vary dramatically as far as the building elevations and their style, shape, height, and appearance. Gannett's elevations consist of a Gambrel-style building, and Greenberg's elevations consist of a high-pitch roof building. Gannett's response to plaintiff's Interrogatory No. 17.

48.    Gannett expressly programmed a separate reception area in its plans for

the DPW job in Falmouth, whereas Greenberg did not expressly include the reception area in his plans, although Greenberg now claims that the central area in the office space would be used as a reception area even though it is not marked on his plans as such. Gannett's response to plaintiff's Interrogatory No. 17; Greenberg Depo. pp. 26-27.

49. Gannett programmed a separate copy room/file room and storage area in its plans for the DPW job in Falmouth, whereas Greenberg did not, or at least cannot identify any such separate space on his plans. Gannett's response to plaintiff's Interrogatory No. 17; Greenberg Depo. p.27.

50. Gannett programmed a separate conference room for the administrative assistants for the Highway Department in its plans for the DPW job in Falmouth, whereas Greenberg did not program a such a separate conference room; Greenberg intended to include conference space within the office space for the administrative assistants. Gannett's responses to Interrogatory No. 17; Greenberg Depo. pp. 27-28.

51. Gannett programmed a separate plumbing/sprinkler room in its plans for the DPW job in Falmouth, whereas Greenberg did not. Gannett's response to plaintiff's Interrogatory No. 17; Greenberg Depo. p.29.

52. As far as toilet facilities, the two sets of plans were different in various respects. Gannett programmed a separate public-only toilet facility, but Greenberg did not. Gannett programmed separate toilet facilities for the Parks Department Superintendent and Assistant Superintendent, whereas Greenberg did not. Gannett programmed a separate toilet facility for the Highway Department Superintendent and Assistant Superintendent, whereas Greenberg did not. Gannett's response to plaintiff's Interrogatory No. 17; Greenberg Depo. pp. 33-35.

53.     Gannett programmed in its plan for the DPW job in Falmouth, a covered area, with canopies to cover material and equipment stored outside, whereas Greenberg did not. Gannett's response to plaintiff's Interrogatory No. 17; Greenberg Depo. p.35.

54.     Gannett programmed in the DPW job in Falmouth, two separate indoor lunchrooms as part of its administration addition – one for the Parks Department and one for the Highway Department – whereas Greenberg programmed a central lunchroom for both Parks and Highway, intending that they would use this room on a rotating basis, within the existing maintenance facility. Gannett's response to plaintiff's Interrogatory No. 17; Greenberg Depo. pp. 36-38. One of Greenberg's "lunchrooms" was outdoors, whereas both of Gannett's lunchrooms were indoors and therefore useable year-round. Greenberg Depo. pp. 63-64.

55.     Gannett programmed in the DPW job in Falmouth, a second floor/story to the administration/office area, with an elevator and two stairways, whereas Greenberg did not program any second floor in his plans (or elevator or stairs). Gannett's response to plaintiff's Interrogatory No. 17; Greenberg Depo. pp. 26, 38; *accord*, Greenberg's ¶26 above.

56.     Gannett programmed a single central vehicle/equipment parking garage with one center drive-through isle, whereas Greenberg programmed a double-wide vehicle storage garage with two drive-through isles. Gannett's response to plaintiff's Interrogatory No. 17; Greenberg Depo. pp. 38-39.

57.     Greenberg programmed in the DPW job in Falmouth, a drive-through wash bay, whereas Greenberg programmed a drive-in/back-out wash bay for the job. Gannett's response to plaintiff's Interrogatory No. 17; Greenberg Depo. p.38.

58. Gannett programmed drive-through/stacked-vehicle heated storage bays, whereas Greenberg programmed 90-degree parking stalls with a drive-through isle. Gannett's response to plaintiff's Interrogatory No. 17; Greenberg Depo. p.39.

59. Greenberg designed the largest new-construction garage, at the back/south end of the site, without any interior columns, by using a truss-style span to hold up the roof without needing columns in the middle of the building. Greenberg's plans, however, had included these columns in the middle of the garage area. The Town requested that Gannett design this garage without columns, to reduce collisions with the trucks that would be using this space. Falmouth Depo. pp.115-116; Gannett Depo. pp.24-25, 60-61.

60. Gannett programmed the DPW job in Falmouth, in the office areas, in such a way as to separate the Parks Department operations from the Highway Department operations, whereas Greenberg programmed this same facility with these operations in the same area. Gannett's response to plaintiff's Interrogatory No. 17; Greenberg Depo. pp. 39-40.

61. On this DPW job in Falmouth, Gannett located the central toilet/shower and locker facilities near the employee gathering area (lunchrooms), whereas Greenberg located these lockers/toilet facilities in the existing maintenance facility away from the employee gathering areas. Gannett's response to plaintiff's Interrogatory No. 17; Greenberg Depo. p.40.

62. On the DPW job in Falmouth, Gannett programmed the Superintendent and Assistant Superintendent offices (for both Parks and Highway) near the employee gathering areas, whereas Greenberg located the Superintendent and Assistant Superintendent offices away from the employee gathering areas. Gannett's response to

plaintiff's Interrogatory No. 17; Greenberg Depo. pp. 41-42.

63. Gannett programmed a new high-bay Parks maintenance shop, whereas Greenberg did not include a high-bay shop for Parks maintenance. Gannett's response to plaintiff's Interrogatory No. 17; Gannett Depo. pp.193-194.

64. Gannett programmed for the DPW job in Falmouth three separate entrances, one for the public, one for Parks Department employees, and another for Highway Department employees; whereas Greenberg provided two entries, one of which is referred to as the employees entry. Gannett's response to plaintiff's Interrogatory No. 17; Greenberg Depo. pp. 45-46.

65. Gannett did not program in the DPW job in Falmouth any mezzanine in the existing repair shop areas, whereas Greenberg did program a mezzanine in the existing repair shop. Gannett's response to plaintiff's Interrogatory No. 17; Greenberg Depo. p.46.

66. Gannett did not program, in the DPW job in Falmouth, the removal of any load-bearing walls within the existing maintenance facility, whereas Greenberg programmed the removal of some such walls within the existing maintenance facility. Gannett's response to plaintiff's Interrogatory No. 17; Greenberg Depo. p.47.

67. GF programmed building roof elevations that match the height of the existing adjacent building; Greenberg's program contains higher roof elevations. Gannett's response to plaintiff's Interrogatory No. 17.

68. Gannett did not program a storage loft for the Parks Department mechanic shop, in its plan for the DPW job in Falmouth, whereas Greenberg did program a new storage loft in the existing Parks mechanic shop. Gannett's response to plaintiff's

Interrogatory No. 17; Greenberg Depo. p.48.

69. On the DPW job in Falmouth, Gannett Fleming programmed segregated parking areas to the northeast, east, and southeast of the site; whereas Greenberg's parking layout consisted of one central parking area to the front/east of the building. Gannett's response to plaintiff's Interrogatory No. 17; Greenberg Depo. p.48.

70. Gannett Fleming did not include any outside terrace and included minimal landscaping in its plans for the DPW site in Falmouth, whereas Greenberg included an exterior terrace and extensive landscaping. Gannett's response to plaintiff's Interrogatory No. 17.

71. The two sets of plans differed in how they programmed site circulation in the back part of the site: Gannett programmed the DPW job in Falmouth for counter-clockwise circulation, whereas Greenberg programmed the site for clockwise circulation. Gannett's response to plaintiff's Interrogatory No. 17. Greenberg Depo. pp. 48-49.

72. Gannett and Greenberg had different approaches for site layout as to the existing salt shed operations at the Falmouth DPW site. Gannett programmed its site layout to take the location of the salt shed into consideration, leaving a wide isle for vehicles to pass between the garage facilities and the salt shed, whereas Greenberg programmed new construction in his garage facilities that went much closer to the salt shed and which would not allow sufficient space for large vehicles to pass between the garage building and the salt shed. Gannett's response to plaintiff's Interrogatory No. 17; *see* Greenberg Depo. p.49 (salt shed not even indicated on Greenberg's plan).

73. GF programmed the limits of the pavement areas to prevent impacts to the wetland buffers; Greenberg programmed pavement areas within the wetland buffer.

Gannett's response to plaintiff's Interrogatory No. 17. Greenberg did not recall any wetlands in the area (Depo. p.56), but these wetlands are shown on Gannett's plans.

74. GF programmed the pavement edge to avoid the steep slope to the north of the site; Greenberg programmed the pavement edge within the limits of the steep slope. Gannett's response to plaintiff's Interrogatory No. 17.

75. Either plaintiff Greenberg, or the Robert Charles Group (RCG) were paid a total of $7,800 or $8,000 for their preliminary drawings for the subject Falmouth DPW job. Greenberg or RCG was paid in full for his/their services on this job, and there was no contention that Falmouth owed them additional money for these services performed from 1993 to 1998. Greenberg Depo. pp.68.

76. When the Town of Falmouth issued its Request for Qualifications in May and June of 2001 (*see* ¶22 above), the subject DPW design job was advertised in the local register on 5/30/01 and 6/6/01. Greenberg submitted no proposal in response to this request for bids in 2001 (even though there was nothing preventing him from doing so at that time). Greenberg Depo. p.75; Falmouth Depo. p.146. In fact, Greenberg testified that he was no longer checking the state Register in 2001, so that he was not aware of the request for bids until after its publication. Greenberg Depo. p.75.

77. Jeff Alberti, Project Manager for Gannett Fleming on the subject DPW job, obtained permission from Town of Falmouth officials not to use the Greenberg preliminary plans for the job, but rather to design Gannett's own plans for the same job (from scratch). Falmouth Depo. pp. 140-143; Gannett Depo. pp.83, 160-161.

III. **Gannett Fleming's Additional Disputed Facts**

78. Greenberg testified that *he chose* the site layout of having the public

00079134.DOC

access offices and administrative facilities in the front, and the garage and vehicle storage facilities in the back. Greenberg Depo. pp. 54-56. However, the Town's deponent William Owen, testified that he instructed both architects to retain this aspect of the design for functional reasons. Falmouth Depo. pp. 42-43, 93.

79. Greenberg contends that he selected the green metal roof for the front-office part of the job, Greenberg Depo. pp. 22-23; whereas the Town's designated deponent testified that he (Owen) chose the green metal roof for the job and instructed Greenberg accordingly, Falmouth Depo. pp. 79, 91-92.

80. Both Gannett and the Town contend vigorously that Gannett's final plans did not copy Greenberg's preliminary plans and are not "substantially similar." Gannett's responses to plaintiff's Interrogatories Nos. 7, 14, 17 (one of plaintiff's exhibits); Falmouth Depo. pp.122, 140-143; Gannett Depo. pp. 176. In contrast, Greenberg contends that Gannett's final plans copy his preliminary plans for this job. *See* ¶¶36, 43 of Greenberg's Facts.

81. The comparison drawings contained in Greenberg's Memorandum in support of his Motion for Summary Judgment, pp. 11 and 14, are not aligned on the actual physical/geographical site as they are on the pages of Greenberg's Memorandum. Attached at Exhibit A to the Albert Affidavit, is a color-coded superimposition of the two sets of plans, which makes this visibly and graphically clear. The plans in yellow are Gannett's final plans, and the outlines in green superimposed on these plans are from Greenberg's preliminary plans. This superimposition shows that the dimensions Greenberg cites in his Memorandum are not in the same place at the site as the (allegedly comparable) dimensions on Gannett's final plans. For example, Greenberg's front door

to the east side of his building would have been placed well behind a significant chunk of new office building in Gannett's plans, and well behind a central north-south corridor on Gannett's plans. *See* Exhibit A to Alberti Affidavit. Further, Greenberg's new construction (shaded in green) would have been placed only on the south half of Gannett's new construction at the site. Id.

## IV. Conclusion

For the foregoing reasons, and for the reasons set forth in Gannett's Memorandum of Law (filed herewith), Gannett respectfully asks this Court to deny plaintiff's Summary Judgment Motion, and/or grant defendants summary judgment.

DEFENDANT, GANNETT FLEMING, INC.,
By Its Attorneys,
MICHIENZIE & SAWIN LLC

Dated: 2/16/06      BY: _____
Paul Michienzie – BBO#548701
John C. Barker – BBO#637406
745 Boylston Street, 5th Floor
Boston, MA 02116
Tel: (617) 227-5660