UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
NOAH GREENBERG,                       )
    Plaintiff                         )
                                      )
v.                                    )   C.A. NO. 04-11934GAO
                                      )
TOWN OF FALMOUTH and                  )
GANNETT FLEMING, INC.,                )
    Defendants                        )
_____)

### DEFENDANT TOWN OF FALMOUTH'S OPPOSITION
### TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

#### Introduction

Defendant Town of Falmouth ("Falmouth") opposes **Plaintiff's Motion for Summary Judgment**. This matter stems from an alleged copyright infringement effected by Defendants as to Plaintiff's architectural drawings.[1]

#### Rebuttal to Plaintiff's Statement of Undisputed Material Facts

1-7.    Admitted.

8.    Falmouth retained Plaintiff to create a report akin to a 'feasibility study' because in addition to the subject "preliminary plans", Falmouth also retained Plaintiff to determine future space requirements, study and recommend improvements to areas outside equipment storage (i.e., bathroom facilities, lunch areas, lockers) and recommend improvements, determine from the information collected what the future space plan should include, prepare an estimate of probable construction costs, inspect existing roof areas and present a report for correcting any problems. (Deposition of Falmouth, 10, attached hereto as A.)

9-13.    Admitted.

14.    William Owen, DPW Director, understood that Plaintiff's plans could be shared with all

---

[1] Early motion practice has narrowed the issues. In granting (in part) Falmouth's dispositive motion, this Court held that Plaintiff cannot recover for events occurring prior to September 3, 2001 (including the 'core' alleged infringement on June 6, 2001). The case goes on, but Plaintiff now must prove that Gannett Fleming committed copyright infringement, and that Falmouth contributed to that infringement, by utilizing his (Plaintiff's) plans in developing the plans Gannett Fleming is now using for the ongoing DPW project.

        those involved in the project, including the ultimate designers. (Falmouth Depo., 25-26 and 68.) When Mr. Owen received Plaintiff's plans in August 1998, he did not intend to share the plans with any non-town personnel at that time. (Falmouth Depo., 25-26.) He did expect, however, to share those plans when the time came to choose the ultimate designer. (Falmouth Depo., 68.) To that end, Mr. Owen shared those plans with those designers who sought to bid on the ultimate contract in June 2001. (Falmouth Depo., 68.)

15-21.   Admitted.

22.     Mr. Owen prepared a Request for Qualifications to seek a designer to complete the final design of the project. (Falmouth Depo. 65.) He did not prepare a Request for Qualifications to seek completion of Plaintiff's preliminary drawings.

23.     Mr. Owen enjoyed Plaintiff's permission by operation of an implied license. (See argument post.)

24.     The referenced document speaks for itself.

25.     At the June 2001 meeting, Mr. Owen expressed an interest in keeping the concept of the current plans unchanged - offices in the front and parking in the rear. (Falmouth Depo., 93.) Mr. Owen wanted to see new ideas from the architects; the new architect was not obligated to track the existing plans. (Falmouth Depo., 145-46.)

26-27.   Admitted.

28.     The referenced document speaks for itself.

29.     Admitted.

30.     The referenced document speaks for itself.

31.     Admitted.

32.     The referenced document speaks for itself.

33-34.   Falmouth has no knowledge of the fact alleged herein and leaves Plaintiff to his proof.

35.     Sometime after 2001, Falmouth determined that it would be best to conduct selective demolition of the existing building. (Falmouth Depo., 109-110.) This determination was in contravention to Plaintiff's plans which called for greater demolition. (Falmouth Depo., 109-110.)

36.     Falmouth approved the final floor plan on March 13, 2003. Falmouth does not dispute the Gannett Fleming testimony that Plaintiff references. Falmouth cannot deny or endorse the

particular basis of Plaintiff's claims.

37.  Falmouth never agreed to indemnify Gannett Fleming for any losses Gannett Fleming might incur secondary to Plaintiff's infringement claims.  See McAndrew v. School Committee of Cambridge, 20 Mass.App.Ct. 356 (1985).

38-40.  Falmouth does not dispute the Gannett Fleming testimony that Plaintiff references.

41.  Plaintiff misquotes Falmouth's statement (by adding the second 'of') and misinterprets the context.  When Falmouth offered that statement, Falmouth was responding to questioning regarding the word 'size' that appeared in Amendment No. 1 to Gannett Fleming's contract.  (Falmouth Depo., 114-117.)  Falmouth was not describing, as Plaintiff suggests,"the work that had been provided until that time".  (¶41 of Plaintiff's Undisputed Material Facts.)  Nonetheless, Gannett Fleming abandoned any type of reliance on Plaintiff's plans years before Amendment No. 1 was created.  (See **Defendant Gannett Fleming's Responses to Plaintiff's First Set of Interrogatories**, Response No. 6, submitted with Plaintiff's Motion.)

42.  Falmouth never agreed to indemnify Gannett Fleming for any losses Gannett Fleming might incur secondary to Plaintiff's infringement claims.  McAndrew v. School Committee of Cambridge, 20 Mass.App.Ct. 356 (1985).

43-44.  Admitted.

45.  The referenced document speaks for itself.

### Falmouth's Statement of Disputed Material Facts

A.  Gannett Fleming did not rely on Plaintiff's plans and, ultimately, the final plans were radically different from Plaintiff's plans.  (**Gannett Fleming's Responses**, Answer Nos. 4-5.)[2]

B.  While Plaintiff was involved in the subject project, Falmouth never spoke to him about be awarded the final project, nor was there talk of commissioning an independent review of his plans (as would have been required, in Falmouth's estimation, under the designer selection laws).  (Falmouth Depo., 133, 138.)

C.  Plaintiff submitted his work to Falmouth without express limitations.  (Affidavit of William Owen, ¶ 4, a copy of which is attached here to as B (the original of which was filed with **Defendant Town of Falmouth's Opposition to Plaintiff's Motion for Preliminary**

---

[2]  Given that the root of Plaintiff's claims lay in Gannett Fleming's alleged pirating (which Falmouth denies), Falmouth incorporates by reference that portion of Gannet Fleming's opposition which details the differences between Plaintiff's plans and Gannet Fleming's plans.

**Injunction**.)) And he said nothing of any prohibition on sharing them. (Owen Aff., ¶ 4.)

## Argument

Plaintiff enjoys a relatively low chance of success on his claims, and to an even greater degree, he cannot prove that he is entitled to judgment as a matter of law.[3]

### I. **Summary Judgment Is Not Warranted As Genuine Issues of Material Fact Exist.**

Plaintiff is not entitled to summary judgment because there is a genuine issue of material fact and, furthermore, the undisputed facts demonstrate that if anyone, Defendants are entitled to judgment as a matter of law. See Fed. R. Civ. P. 56©). A principal purpose of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and the rule should be interpreted and applied in a way that allows it to accomplish this purpose. See Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

### II. **Plaintiff Submitted an Implied License to Use His Plans.**

Even if Plaintiff were to show that Gannett Fleming copied his plans (and that Falmouth contributed thereto), Plaintiff still cannot recover because there is, at the very least, a question of fact as to whether he provided Falmouth with an implied license to copy those plans. While the touchstone for determining the presence of an implied license is intent, see Nelson-Salabes, Inc. v. Morningside Dev., LLC, 284 F.3d 505, 515 (4th Cir. 2002), the analysis turns on at least three factors: (1) whether the parties were engaged in a short-term discrete transaction as opposed to an ongoing relationship; (2) whether the creator utilized written contracts providing that copyrighted

---

[3] Plaintiff's Motion should be denied as a matter of law. A sortie Plaintiff launched early in this matter to vie for a preliminary injunction failed miserably. Not only did the Court hold that Plaintiff did not enjoy a likelihood of success on the merits, the Court went so far as to write: "Greenberg's likelihood of proving infringement and, therefore, likelihood of ultimate success on the merits is *relatively low*." Memorandum and Order, (O'Toole, D.J.) dated February 8, 2005, p. 8 (emphasis added). Given the absence of new impacting facts to fortify his motion *sub judice*, this Court should deny it as a matter of law.

materials could only be used with the creator's future involvement or express permission; and (3) whether the creator's conduct during the creation or delivery of the copyrighted material indicated that use of the material without the creator's involvement or consent was permissible. Id. at 516. This is not an exhaustive list of factors to consider, but it provides useful guidance in determining the crucial question of intent.

The "intent" benchmark is an *objective* inquiry into facts that manifest such a contractual intent. See I.A.E., Inc. v. Shaver, 74 F.3d 768, 777 (7th Cir. 1996) (relevant intent "is not the parties' subjective intent but their outward manifestation of it"). As such, if an architect worked on a short-term assignment with no outward signs of expecting to continue involvement with the larger project, and handed over the requested plans to a client without a contract or other limitations, it would not matter if he harbored private hopes of working on the next phase of the project. See id. This is the case here.

Plaintiff worked on a short-term assignment with no legitimate expectations to continue involvement with the larger project. There is a rebuttable presumption that municipalities that hire an architect for a feasability study will not hire that same architect for the final project. See M.G.L., c. 7, § 38H(I). Section 38H(I) reads, "Awarding authorities in cities and towns may allow a designer who conducted a feasibility study to continue with the design of a project, *provided that* they shall commission an independent review, by a knowledgeable and competent individual or business doing such work, of the feasibility designer's work to insure its reasonableness and its adequacy prior to allowing such a designer to continue on said project." (Emphasis added.) While Plaintiff was involved, Falmouth never spoke to him about being awarded the final project, nor was there any talk of commissioning an independent review of his plans (as would have been required, in Falmouth's

estimation, under the designer selection laws).  When Plaintiff was asked at his deposition to pinpoint what Falmouth said to him regarding his being awarded the final project (as opposed to just the preliminaries), he said, "I can't recall anything specific in that regard." (Plaintiff's Deposition, 122, attached hereto as C.)  The simple truth is that any expectation Plaintiff had to continue onto the bigger project was based on assumption and conjecture; such expectation was unreasonable and unsupported.

Plaintiff submitted his work to Falmouth without express limitations. (Owen Aff., ¶ 4.)  And he said nothing of any prohibition on sharing those plans. (Owen Aff., ¶ 4.)  Nowhere in the record is there evidence that when Plaintiff handed over his plans to Falmouth, he intended Falmouth to never share them.[4]

In light of the foregoing, Plaintiff could not have harbored any reasonable hopes of working on the next phase of the DPW project.  Moreover, any claim Plaintiff might make that he did *not* provide a non-exclusive license does not stand up to reason.  If Plaintiff were to make such an argument, then it would beg this question:  What value would Plaintiff's preliminary plans have if not to aid Falmouth in completing the ultimate project?  In this case, even in Plaintiff's plans were copied, it was only to complete the project for which Falmouth retained Plaintiff's services.  It makes no sense that Falmouth would be unable to use Plaintiff's preliminary plans to consummate the subject project.

Given the foregoing, Plaintiff cannot show that there is no question of material fact and that

---

[4] In fact, the opposite is true.  With a letter dated February 7, 2000, Plaintiff delivered another copy of his plans and tells Falmouth, "You can reproduce these drawings ... *at your will*, providing only that our NGA Title block is included with all reproductions as a copyright for the design."  (Emphasis added.)  Although this letter may have been written in the context of acquiring funding, it still shows that Plaintiff had little predilection with his plans being copied for this project.

he is entitled to judgment as a matter of law.

## Conclusion

For the foregoing reasons, Falmouth respectfully requests that this Court deny Plaintiff's motion for summary judgment.

                                          Respectfully submitted,

                                          The Defendant,
                                          TOWN OF FALMOUTH,
                                          By its attorneys,

                                          **PIERCE, DAVIS & PERRITANO, LLP**

                                          ___/s/ John J. Davis_____
                                          John J. Davis, BBO #115890
                                          Daniel G. Skrip, BBO #629784
                                          Ten Winthrop Square
                                          Boston, MA 02110
                                          (617) 350-0950

Dated: February 16, 2006

CERTIFICATE OF SERVICE

I, John J. Davis, hereby certify that on this 16th day of February, 2006, this document was served by e-mail on all counsel of record.

      ___/s/ John J. Davis_____
      Attorney John J. Davis