UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

CIVIL ACTION No. 04-11934-GAO

NOAH GREENBERG,
    Plaintiff

v.

TOWN OF FALMOUTH and
GANNETT FLEMING, INC.,
    Defendants

**PLAINTIFF'S OPPOSITION TO DEFENDANTS'
CROSS MOTIONS FOR SUMMARY JUDGMENT**

In this action, the plaintiff, Noah Greenberg, has moved for summary judgment on the issue of the substantial similarity of his copyright protected architectural drawings and later drawings defendant Gannett Fleming, Inc., prepared for the same project. Gannett Fleming has filed a cross motion for summary judgment, contending that the respective plans, as a matter of law, are not substantially similar. The Town of Falmouth too has made a cross motion for summary judgment, contending that the undisputed facts establish that Mr. Greenberg granted it a license to use his copyright protected architectural drawings.

As is more fully explained below, almost exclusively, Gannett Fleming argues that the larger size of its drawings necessarily renders the respective drawings different: in so many words, when Mr. Greenberg's drawings are compared side-by-side with its, the two drawings do not appear similar.

Gannett Fleming, however, has misconstrued the proper standard. What is at issue is not whether the larger size of its drawings renders the two sets of drawings different, but whether Gannett Fleming's drawings retain Mr. Greenberg's copyright protected drawings within its larger drawings. The Tenth Circuit, in <u>Jacobsen v. Deseret Book Company</u>, 287 F.3d 936, 945 (10th Cir.) cert. denied, 537 US. 1066 (2002), in an analogous case relying on United States Supreme Court precedent and the frequently cited Nimmer treatise, has described the issue as follows:

> [A]lthough the . . . catalogue of differences between [plaintiff's work] and the [defendant's work] is accurate, it is largely irrelevant. We realize the five-volume[s of the defendant's work] contain[] much material not taken from the single-volume [plaintiff's work]. However, "a taking may not be excused merely because it is insubstantial with respect to the infringing work. As Judge Learned Hand cogently remarked, 'no plagiarist can excuse the wrong by showing how much of his work he did not pirate.' " Harper & Row, Publishers, Inc. v. Nation Enterprises, 471 U.S.539, 565 (1985) (quoting Sheldon v. Metro-Goldwyn Pictures Corp., 81 F.2d 49, 56 (2d Cir. 1936)). "The question in each case is whether the similarity relates to matter that constitutes a substantial portion of plaintiff's work--not whether such material constitutes a substantial portion of defendant's work." 4 Nimmer on Copyright, §13.03[A][2], at 13-46 (2001). Thus we are not concerned with whether the copied material is a substantial part of the [defendant's work]. Rather, we must consider whether [the defendants] copied a substantial portion of [plaintiff's work].

With this understanding, Mr. Greenberg posits that he can demonstrate, on the summary judgment record, conclusively, that Gannett Fleming's drawings are an infringement, by making a wholesale incorporation of Mr. Greenberg's drawings into its drawings or, at the very least, that he is entitled to a trial on the issue. See Gannett Fleming's Memorandum of Law, In Opposition to Plaintiff's Motion for Summary Judgment, and Gannett Fleming's Cross-Motion for Summary Judgment, p. 16 (substantial similarity normally a question of fact) (citations omitted).

The respective office-space designs, [1] stripped of their distracting room designations, notes, and hatch marks, but indicating their shared dimensions, [2] are set forth below. The illustration reflects an unaltered, to-scale reproduction of the defendants' entire new-office-space design and an unaltered, to the same scale, reproduction of Mr. Greenberg's entire new-office-space design. The highlighted areas reflect dimensions that appear in both drawings.

---

[1] The reproductions included herein are authenticated in the Affidavit of Noah Greenberg Submitted in Opposition to the Defendants' Cross Motions for Summary Judgment, submitted herewith. As Gannett Fleming confirms, at pages 9 - 10 of Gannett Fleming's Memorandum of Law, In Opposition to Plaintiff's Motion for Summary Judgment, and Gannett Fleming's Cross-Motion for Summary Judgment (sometimes hereinafter referred to as "defendant's opposition memorandum"), in deposition, Mr. Greenberg testified that the respective plans present the same "basic arrangement of spaces" and that the plans "are the same" with the same "layout with . . . some variations."

[2] Gannett Fleming acknowledges these shared dimensions at pages 12 - 13 of its opposition memorandum.



The retention | location of the plaintiff's design within the defendants' plans (as the defendants contracted) is not difficult to locate: (1) the 85± x 22 dimension appears in both, in this area three spaces, some designed with 45° angle walls, are separated by two corridors; (2A) to the west is an area of a 28-foot dimension, with identically designed spaces to the north, (2B) space in the middle (open in the plaintiff's and partitioned in the defendants'), and two comparatively smaller offices, without 45° angle walls, to the south (the smaller of the defendants' offices with the same dimensions as either of the plaintiff's); and (3) a third area to the west and south, sharing a 50-foot dimension, with three or four offices, in both, offices are designed in 20-foot and 15-foot (approximately) widths. Mr. Greenberg suggests that this undisputed description itself establishes substantial similarity: identical dimensions in almost identical juxtaposition, with the same number, shapes, and relative sizes of spaces (primarily, but not all, office spaces) in the same locations. Any differences, because they occur within the perimeters Mr. Greenberg designed, and because they do not change the number, arrangement, or general shape of the spaces, are necessarily insignificant.

Further, in comparing the corresponding portions of the respective drawings, the only actual differences are (1) the addition of a rectangular space (further divided into three identical rectangular spaces) with a necessary, adjacent corridor, [3] (2) some slight corridor adjustments, and (3) some slight adjustment to some partitions. Because the additional rectangular space is not relevant to the comparison of the respective drawings, the <u>relevant</u> differences in the respective drawings, therefore, are limited to corridor and partition adjustments. That the added rectangle required some of these slight changes, such as requiring the added corridor, or permitted others, such as permitting some partition adjustments, when the restrooms in the small dimension were relocated to the added rectangular area,[4] further minimizes the significance of the already very slight changes. [5]

---

[3] In observing Mr. Greenberg's drawing at page 3 above, the added rectangle sits almost exactly in the large center north area (roughly 28 x 32). It is obvious that when this space was divided into three spaces, an east corridor was required to permit access to the new and existing spaces. Otherwise, some spaces would be accessible only from within other spaces.

[4] Gannett Fleming programmed restroom and locker facilities in the areas it added, permitting that Mr. Greenberg's restroom areas (originally existing in the smallest, west dimension) be rededicated and adjusted somewhat.

[5] The plaintiff's drawing depicted below reflects two slight alterations only (other than indicating where the rectangle was added): adjustment of the corridors in the east-most area (one vertical corridor added [<u>see</u> <u>supra</u> note 3], the two horizontal corridors narrowed, 45° angle walls were retained) and relocation of the west-most area eight feet west and five feet south. These changes are not required to reach the conclusion of substantial similarity, but Mr. Greenberg is entitled to demonstrate visually how the defendants' plans represent merely slight adjustments to his drawings, because, as this court has indicated, "[s]light . . . variations will be insufficient to defeat a finding of infringement," Memorandum and Order on Plaintiff's Motion for Preliminary Injunction, p. 8 (February 8, 2006). Mr. Greenberg points out, in particular, that the slight changes in the dimensions of the spaces in the east-most area result entirely from corridor adjustments and not any further partition adjustments, unless Gannett Fleming were to argue that moving the 45° angle walls is more in the nature of a partition adjustment, but in that instance Gannett Fleming would need to concede that it modified Mr. Greenberg's drawings.



In the final analysis, that Gannett Fleming added a center rectangle does not result in a new, noninfringing design, especially when <u>all</u> of Mr. Greenberg's remaining dimensions were retained. If copyright protection can be defeated by the expediency of extending one dimension to permit an additional interior rectangular space (as here occurred), an alteration of almost no creativity, while retaining the remaining design, almost inviolate, within the enlarged dimension, copyright protection is slim indeed. The defendants' plans are anything but a "substantially different expression of the idea embodied in the copyrighted work," Memorandum and Order on Plaintiff's Motion for Preliminary Injunction, p. 8 (February 8, 2006), but the exact same expression of the idea embodied in the copyrighted work, with the addition of a rectangle and certain slight changes the rectangle precipitated. The only outcome is that the "average lay observer would recognize the [defendants' work] as having been appropriated from [the plaintiff's] copyrighted work." Memorandum and Order p. 7 (February 8, 2006).

5

Mr. Greenberg's position can also be expressed in the context of a derivative work: If, hypothetically, Mr. Greenberg had prepared the corresponding portions of the defendants' drawings, including the added rectangle, and explained that the design was based upon his original drawings, and that he enlarged one dimension 25 feet (lineally), to permit the insertion of the rectangle (and its adjacent corridor), and that his original design was retained within this 25-foot-larger footprint, with some corridor adjustments and some minor partitions adjustments (all of which is an actual description of how his drawings could be and were modified), this court would have no difficulty concluding that the resulting drawing was derivative of his prior drawing, see 17 U.S.C. 101 ("[a] work consisting of . . . elaborations[] or other modifications [to a preexisting work] . . . is a 'derivative work'"), given that five of the six original dimensions remain, that the same juxtaposition of shapes is retained, and that the same number of spaces of similar shapes and sizes appear in the same locations. The derivative nature of the work remains even if the defendants prepare these modified drawings, especially when the summary judgment record conclusively demonstrates that the defendants contracted to do just that, modify Mr. Greenberg's drawings, and conclusively demonstrates that the defendants have conceded use of the drawings and conclusively demonstrates that the defendants have conceded that Mr. Greenberg is a person most knowledgeable of the conception of the defendants' drawings, and when a visual inspection of the drawings confirms the slight modifications that were made. Yet, when the defendants prepare the derivative work, it is an infringement. 17 U.S.C. 106(2). [6]

---

[6] Probably the defendants' entire first floor plan constitutes a derivative work (though only the comparable portion need qualify as a derivative work for an infringement to result). The exact dimensions (vis. footprint) of the defendants' floor plans results from the following adjustments to Mr. Greenberg's drawings: (one) extend the center dimension 25 feet by relocating the south wall 10 feet and the north wall 15 feet (all as described above), while relocating the smaller west area slightly to the south to occupy the same southern plane as the new southern plane, and (two) extend the 85± foot dimension approximately 25 feet east. These two changes will produce the defendants' footprint from Mr. Greenberg's drawings. Thereafter, all of Mr. Greenberg's design elements were retained in the larger footprint. As mentioned above, in the enlarged center area, Gannett Fleming

What is said in <u>TMTV, Corporation v. Mass Productions, Inc.</u>, 345 F. Supp.2d 196, 214 (D.P.R. 2004), is here appropriate: "Summary judgment is proper in favor of the plaintiff in a copyright infringement case where the similarity between the copy and the original is so similar that reasonable minds could not differ . . . . The possibility of independent creation is virtually impossible. Therefore, plaintiffs are entitled to judgment as a matter of law on the copyright infringement claim." (ellipses in original, citations omitted).

The laundry list of differences that Gannett Fleming presents all discuss the additional space Gannett Fleming programmed or matters other than the office-space design. Its additions to Mr. Greenberg's drawings, however, will not permit is wholesale incorporation of his copyright protected drawing into its own. Gannett Fleming itemizes a list of proposed differences beginning on page four of its opposition memorandum. Mr. Greenberg responds to the list of purported differences as follows:

> 1. Gannett Fleming's total square footage of the new structure was [larger than the plaintiff's].

---

added rectangles. In the enlarged east area, Gannett Fleming added little, primarily a reception area, toilets, an elevator, stairs, and one or perhaps two partitions. In effect, Gannett Fleming began with Mr. Greenberg's drawings, retained the original design, and added space to the east. Certainly, adding space to the east does not permit the retention of Mr. Greenberg's design, but even beyond that, the added space was accomplished in absolutely the least imaginative fashion possible, by moving one wall to gain space: even where Gannett Fleming sought to add space, it accomplished the addition by simple modifications to Mr. Greenberg's drawings, rather than contributing any of its own design. Here too, if Mr. Greenberg were to explain that he enlarged some dimensions but retained the original design in the enlarged design, the work would qualify as a derivative work, as an elaboration or modification of his existing work. This comparison is not to the effect, "if only Mr. Greenberg had designed his plans differently, they would look like Gannett Fleming's plans," as Gannett Fleming has attempted to characterize it, but a demonstration of how Gannett Fleming's plans, their dimensions and design elements, are patently appropriated from Mr. Greenberg's drawings. The appropriation could not be clearer. Gannett Fleming's eleventh-hour change of position, that it prepared its plans from scratch, is incredible and unworthy of consideration, and demonstrates the lengths to which it will go to burden the plaintiff and distract the court.

7

**Response**: Gannett Fleming's addition to Mr. Greenberg's drawings is not responsive to whether Mr. Greenberg's design was retained within its own.

2. The two sets of plans for the subject job vary dramatically as far as building elevations, and external style and appearance . . .

**Response**: The elevations and external appearance are altered by the addition of a second floor. Adding a second floor, with the corresponding changes in elevations, cannot defeat infringement. If a second floor or second story could defeat copyright protection, every one-story floor plan would be subject to appropriation merely by adding a second story, even if the second story covered only a relatively small area of the first floor (as here). In other respects, the defendant has confirmed that the exterior appearance is retained. See defendant's opposition memorandum, p. 10 & n. 10, confirming as similarities in the external appearance the respective buildings, their "veneer masonry [facade], steel stud construction, and the [green] steel construction metal roofing." These similarities confirm that the defendants appropriated not only Mr. Greenberg's floor plans but also the aesthetics of the appearance of the resulting building. The wholesale appropriation of Mr. Greenberg's work is confirmed.

3. The following items/features were expressly programmed into Gannett's final plans for the subject job, whereas they were not (expressly) included in Greenberg's preliminary plans for the subject job: reception area in front office space; copy room/file room and storage area in office space; separate conference room for administrative assistants for the Falmouth Highway Department; separate plumbing/sprinkler room; separate public-only toilets in front office area; separate toilet facility for Highway Department Superintendent and Assistance Superintendent; covered/canopied area to cover material and equipment stored outside (at back of garage area).

**Response:** All of these items address spaces Gannett Fleming programmed in its added areas (such as additional toilet facilities and reception area) or a redesignation of areas existing in the plaintiff's drawing (such as Gannett Flemings' placement of an "administrative assistant for the Falmouth Highway Department" in Mr. Greenberg's reception area). This "argument," however, is no different than to say, the master bedroom became the great room and the great room became the master bedroom. The words written in the spaces, however, are irrelevant to a comparison. Changing the persons or departments intended to occupy an office space is not a design change--the design remains the same.

4. Gannett and Greenberg programmed lunchrooms in the front office area differently. Gannett programmed two separate indoor lunch rooms . . . whereas Greenberg programmed a central lunch room . . . .

**Response**: Because Gannett Fleming added space, it was able to add a second indoor lunch room (both are redesignations of areas reflected on Mr. Greenberg's drawings as Dispatch and Parks Department). Changing the use of a space, however, is not a design change--the design remains the same.

5. Gannett Fleming programmed a second floor in its plans . . . .

**Response**. See response to number two above.

6. Gannett designed the largest garage space, at the back of the site, without any interior columns, in order to avoid collisions with the trucks using this space; whereas Greenberg designed a comparable area using interior columns, down the middle of the garage area.

**Response**: This argument does not go to the office space | addition design, though it does indicate that the garage designs were comparable, with Gannett Fleming employing supports other than columns.

7. GF programmed the facility to separate the Parks operations from the Highway operations; Greenberg programmed the facility to combine these operations in the same area.

**Response**: That the larger area Gannett Fleming designed allowed it, so it claims, to separate departments does not permit it to copy Mr. Greenberg's design. This argument also discusses what people will occupy what rooms and, as mentioned above, is not a design difference.

8. GF programmed a new high-bay Parks Maintenance Shop; Greenberg did not include a high-bay area for these operations.

**Response**: Gannett Fleming has not explained what this means.

9. GF programmed separate entrances for Parks employees and Highway employees; Greenberg provide [sic] a central employee entrance.

**Response**: Gannett Fleming enlarged Mr. Greenberg's design. This enlargement permitted of multiple or separate entrances but does not permit the retention | duplication of Mr. Greenberg's design within its plans.

10. GF did not program a mezzanine in the existing Repair Shop areas; Greenberg programmed a mezzanine in the existing Repair Shop.

9

**Response**: Because Gannett Fleming enlarged Mr. Greenberg's plans, it was able to locate in the larger space some items that Mr. Greenberg indicated as renovations in the existing building. That Gannett Fleming elected to avoid renovations in favor of new construction does not permit it to retain Mr. Greenberg's original new-construction design within its own new construction.

11. GF did not program any new walls within the existing maintenance facility . . .

**Response**: See above.

12. Parking: GF parking layout includes segregated parking areas to the northeast, east, and southeast of the site. Greenberg's parking consists of one central parking area to the front (east) of the building.

**Response**: Because Gannett Fleming designed a larger facility, apparently it was required to relocate parking areas. That Gannett Fleming was required to redesign the parking areas does not permit it to retain | duplicate Mr. Greenberg's office-space design within its plans. In any event, infringement of a building design cannot be defeated by locating parking differently. Typically, parking would not be a consideration in determining whether a building design is infringing.

13. Site amenities: Greenberg included an exterior terrace and extensive landscaping; GF did not include a terrace and very minimal landscaping.

**Response**: That Gannett Fleming chose not to provide a landscape design is not relevant to whether it otherwise copied Mr. Greenberg's building design. Landscape design probably is not protectable in any event, so failing to copy landscape is not relevant. Gannett Fleming duplicated the entire terrace design in its floor plan design, designating it office space instead. The fact that Mr. Greenberg's drawings indicate the word "Terrace" on this two-dimensional floor plan does not defeat or permit the defendants' copying of this two-dimensional area. If the word "Terrace" were omitted, the copying would be patent--insertion of this word does not make the copying anything less.

14. Site Circulation. GF programmed the site for counter-clockwise circulation; Greenberg programmed for clockwise circulation.

**Response**: How automobiles travel around the site, based upon the arrows painted on the ground, is not a design element (given that the road remains the same) but rather is functional. See Deposition of Gannett Fleming, p. 193: "Q. What does circulation mean? A: The direction that the vehicles travel though the site. Q. Just a matter of the arrows on the ground saying to go in this direction? A: That's correct." Even if this were a design element, changing the traffic direction does not permit Gannett Fleming to retain | duplicate Mr. Greenberg's office-space design within its own plans.

10

> 15. GF programmed the site layout to take into consideration the existing salt shed operations; Greenberg did not program for existing salt shed operations.
>
> **Response**: It appears that this alleged difference is relevant to the garage design and not the office design and does not permit the retention | duplication of Mr. Greenberg's office-space design within Gannett Fleming's plans.

After this itemization, which deals largely with the larger space Gannett Fleming programmed (and to a lesser extent slight differences to the comparable garage structures), Gannett Fleming concludes "the two sets of plans are not even similar, let alone substantially similar." The argument merely states that bigger is necessarily different, and bigger, because it is different, cannot be a copying. The real issue, however, is not how the respective finished products compare, but rather, how much of Mr. Greenberg's design is retained in the defendants' larger plan. The defendant's laundry list of differences is off the mark and insufficient to warrant summary judgment for the defendants. See Lotus Development Corp. v. Paperback Software International, 740 F. Supp. 37 (D. Mass.1990)  ("[A] laundry list of specific differences . . . will not preclude a finding of infringement where the works are substantially similar in other respects.") (citations omitted).

Mr. Greenberg respectfully suggests, that in the absence of tracing (of which there is some evidence, see Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment, note 4), a stronger showing of substantial similarity cannot be made, given that the only differences between the corresponding portions of the respective drawings are slight corridor adjustments and equally slight partition adjustments.

The defendants' usurpation of Mr. Greenberg's office space design was a "taking [of] material of substance and value," Memorandum and Order p. 4 (February 8, 2006), or at least is a matter of which the plaintiff should be permitted to present to a jury.

**Placement on the site**: At pages 12 - 13 of its opposition memorandum, Gannett Fleming in fact recognizes the similar dimensions appearing in the respective drawings, but dismisses them because they appear at different locations on the site: "this 28-foot dimension is not in the same place on the site," "the drawings . . . are not aligned as they would be on the site," "[another] block of rooms are in different places on the physical site." The copyright act, however, protects "the design of a building." Where the building sits on a site is not relevant to copyright protection. Certainly, copyright cannot be defeated merely by placing a protected design differently on a site or locating a design on a different site. The defendants have not cited any authority for this proposition; and its characterization that Mr. Greenberg's comparison is "specious," page 13, because the designs do not sit similarly on the site, merely confirms its own serious misunderstanding of the true issues in this dispute. Indeed, the common infringement case is the impermissible use of architectural plans on another site. See for instance, Fred Riley Home Building Corp. v. Cosgrove, 864 F. Supp. 1034 (D. Kan. 1994).

**Merger**: Gannett Fleming seemingly attempts some effort at merger. In its presentation, however, the only alleged requirement dictated by the site is that the office-space addition be located to the east of the existing structure. Even if true, such a requirement does not permit the defendants to place Mr. Greenberg's office-space design to the east of the existing structure, as it has done.

**Defendant's Multiple Changes of Position**: While "substantial similarity" is the issue in this dispute, and only requires a review of the respective drawings, Gannett Fleming's waffling on the other evidence in the case confirms, rather than overcomes, the factual disputes in this matter and is inconsistent with a grant of summary judgment in its favor, as it requests. Gannett Fleming has

argued that the contract between it and the town was inartfully drafted and not to be credited,[7] that its cross-claim too does not mean what it says, and that finally, its interrogatory answers also are wrong. The argument is, in effect, do not believe any of the evidence, or even its own pleadings, but accept our denials here expressed, contrary to all the prior doings, and award us judgment. Such is not a proper summary judgment argument.[8]

**Town of Falmouth's Cross-Motion for Summary Judgment on the Affirmative Defense of License**: In the Defendant Town of Falmouth's Opposition to the Plaintiff's Motion for Summary Judgment, the town has included three alleged Disputed [sic] Material Facts, two of which apparently are intended to address the affirmative defense of license. Because the town has alleged additional facts in support of its request for summary judgment, its request is a cross-motion, and not, as the town purports, a request under rule 56(c). Here, the town's entire argument rests on three hypotheses: that Mr. Greenberg worked on a short-term assignment, that he failed to make an express

---

[7] The contract, as it states the intent of the parties, is relevant and admissible under Fed. Rule Evidence 803(3) as a statement of the defendants' intent to make use of Mr. Greenberg's drawings, which is relevant to whether the drawings were used to such an extent as to result in copying.

[8] The defendant Gannett Fleming's multiple changes of position is unconvincing: The defendants unquestionably contracted to use Mr. Greenberg's drawings (Plaintiff's Statement of Undisputed Material Facts, ¶¶ 28 - 32) (though now Gannett Fleming claims the contract does not mean what it says), they then submitted a cross-claim, <u>after its plans were completed</u>, stating that they relied upon the town's provision of Mr. Greenberg's drawings and on statements that the plans should be reviewed in making new plans for the job (though now, despite this reliance, the defendant claims that Mr. Greenberg's drawings were not used at all, and thus its cross claim makes no sense), and in answering interrogatories, Gannett Fleming identified Mr. Greenberg as a person most knowledgeable of its, Gannett Fleming's, preparation of architectural drawings, which is certainly consistent with the contract and cross-claim, though now, in nothing less than a complete reversal of position, Gannett Fleming claims it prepared the relevant plans from scratch.

 The defendant's characterization of Mr. Greenberg's reference to this interrogatory answer, that the defendant signed under the penalties of perjury and which is entirely consistent with Mr. Greenberg's claim, as "desperate," opposition memorandum, p. 15, simply makes no sense. Rather it is Gannett Fleming that is desperate to move away from its repeated acknowledgments that Mr. Greenberg's drawings were instrumental in their plans.

reservation of rights in his drawings, and that he was disqualified from further work on the project (somehow evidencing his intent to transfer his intellectual property rights).

**Short-term project**: The undisputed (or at least disputed) material facts reveal that Mr. Greenberg drafted plans and prepared cost estimates over a four-year period (plaintiff's Statement of Undisputed Material Facts, ¶¶ 8, 12, 15, 17, 18). The project was not short-term, or at least whether it was so is a question of fact.

**Failure of Express Reservation**: The town argues that Mr. Greenberg submitted his work to the town without express limitations and that "no where in the record is there evidence that when Plaintiff handed over his plans to Falmouth, he intended Falmouth to never share them." [9]

To the contrary, the evidence was that Mr. Greenberg intended to retain his copyright and that the town had no expectation that the drawings would be provided to other architects (Plaintiff's Statement of Undisputed Material Facts, ¶¶ 13, 14, 20, 21, 24, 33). Indeed, every objective manifestation of Mr. Greenberg's intent appearing in the record, including his own words, was that he retained his copyright (Id.). In fact, nowhere in the record is there any evidence that Mr. Greenberg intended to surrender his copyright. The town attempts to equate a failure to make an express reservation of rights with the grant of a license. The argument misses the point in two

---

[9] The quoted, convoluted language misstates the relevant law. The issue is whether the evidence establishes that Mr. Greenberg understood that the town would use his drawings, not whether there is an absence of evidence that Mr. Greenberg intended that his plans would not be shared. Even if there were an absence of evidence that "when Plaintiff handed over his plans to Falmouth, he intended Falmouth never to share them," which Mr. Greenberg denies, the absence of evidence would defeat the Town's ability to prove a license, not result in a license. If, for instance, Mr. Greenberg never considered the issue of sharing, he would not possess intent to grant a license, and no license would be found. See John G. Danielson, Inc. v. Winchester-Conant Properties, Inc., 322 F.3d 26, 42 (1st Cir. 2003) ("it is also possible that [the architect] never contemplated the risk that [the owner would select another architect to complete the project]" in which event no license would result because the architect would not possess an intent to grant a license). The supposed lack of evidence on the subject defeats the town's ability to establish a license and confirms Mr. Greenberg's entitlement to summary judgment on that issue.

respects: as the author of the subject plans, Mr. Greenberg is the owner and need not reiterate his rights in order to avoid losing them. Second, if a failure to reserve rights were sufficient to grant a license, license would become the rule rather than the exception, which clearly it is not.

The town attempts to argue that because it circulated Mr. Greenberg's drawings in 2001, it must have possessed the intent to use the drawings years earlier, in 1994, when it obtained the drawings. First, all the evidence of the parties intent in 1994 and 1998 was that the drawings would be shared only with town personnel (Plaintiff's Statement of Undisputed Material Facts, ¶¶ 13, 14, 21). That the town ultimately distributed the drawings does not resolve the question of intent in its favor. Indeed, if an infringer's ultimate infringement is evidence of an earlier license, every case would result in a license (in the absence, perhaps, of an express reservation of rights, which is not the law). Further, evidence of the town's intent is not the issue to be resolved; the owner's intent only is relevant. Finally, in responding to the plaintiff's statement of undisputed material facts, the town stated that in 2001, when the town circulated Mr. Greenberg's drawings, it was not for the purpose of completing those drawings (but presumably for some noninfringing purpose). See Town of Falmouth's Rebuttal to Plaintiff's Statement of Undisputed Material Facts, ¶¶ 22 & 25 (in 2001, when the town circulated the plaintiff's drawings, it "did not . . . seek completion of Plaintiff's preliminary drawings" but was interested only in keeping the concept of "offices in the front and parking in the rear" and other than that wanted new ideas and use of the drawings was not required). Even the town's self-proclaimed uses are evidence that it believed it did not have carte blanche use of Mr. Greenberg's drawings (did not have a license) and are insufficient to award the town summary judgment on the issue.

**Disqualification**: The town further contends that the Massachusetts designer-selection statute prohibits Mr. Greenberg's further participation in the project, somehow evidencing his intent to grant the town a license, but points to no evidence that Mr. Greenberg actually had any knowledge of the statute. Even the town did not believe that Mr. Greenberg's further participation was prohibited. See Deposition of the Town of Falmouth p. 146 ("Q: As far as you know, was Greenberg able to freely bid on the DPW design job . . . in 2001. A. Yes." Q: There was no impediment why Greenberg would not have been considered for that job? A. No.") The contention that the existence of a statue, of which there is no evidence that Mr. Greenberg had any knowledge, somehow evidences his intent to part with his intellectual property is unavailing, especially when the town did not even possess such an understanding. Mr. Greenberg denies in any event that he was disqualified. See generally Plaintiff's Reply to Defendant Town of Falmouth's Opposition to Plaintiff's Motion for Preliminary Injunction.

The reality is that the defendant has pointed to absolutely no evidence on which it can carry its burden on this issue, and confirms that it is Mr. Greenberg who entitled to summary judgment.

For the foregoing reasons, the plaintiff, Mr. Greenberg, respectfully requests that this court deny the defendants' cross-motions for summary judgment and grant his own motion for summary judgment.

                                                          Respectfully submitted,
the plaintiff
Noah Greenberg,
by his attorney,

_____
Richard M. Russell, Esquire
Heritage Place Condominium
205 Worcester Court • B 2
Falmouth, Massachusetts 02540
Telephone No. 508.457.7557

Dated: February 23, 2006           BBO No. 561997

### CERTIFICATE OF SERVICE

      I hereby certify that the Plaintiff's Opposition of Defendants' Cross Motions for Summary Judgment, the Plaintiff's Response to the Defendants' Statements of Undisputed and Disputed Material Facts, and the Affidavit of Noah Greenberg Submitted in Opposition to the Defendants' Cross Motions for Summary Judgment, all filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies need not be sent because all parties are represented by registered participants.

                                        Respectfully submitted,
                                        the plaintiff,
                                        Noah Greenberg,
                                        by his attorney,

                                        _____
                                        Richard M. Russell
                                        Heritage Place Condominium
                                        205 Worcester Court • Unit B 2
                                        Falmouth, Massachusetts 02540
                                        Telephone No. 508.457.7557
Dated: February 23, 2006                  BBO No. 561997