UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

NOAH GREENBERG, )
    Plaintiff, )
)
v. ) C.A. NO. 04-11934GAO
)
GANNETT FLEMING, INC., )
    Defendant/ )
    Cross-Claim Plaintiff, )
and )
TOWN OF FALMOUTH )
    Defendant/ )
    Cross-Claim Defendant. )

### DEFENDANT TOWN OF FALMOUTH'S PRETRIAL PRE-TRIAL MEMORANDUM

Now comes Defendant Town of Falmouth ("Falmouth") and hereby submits its portion of the Pre-Trial Memorandum:

**(1)  A Concise Summary of the Evidence That Will Be Offered by the Parties**

    **(i)  Liability**

Given the dynamic of this litigation, and the result of early-suit litigation practice, Falmouth is bootstrapped to Defendant Gannett Fleming, Inc.'s ("G-F's") defense to Plaintiff's claim of copying. G-F claims it did not copy Plaintiff's preliminary plans for the subject DPW job and will offer evidence that shows it designed its *own* plans, which are very different from Plaintiff's.

Even if Plaintiff were to show that G-F copied his plans, he still cannot recover because he provided Falmouth with an implied license to copy those plans. Here, Falmouth will argue that Plaintiff was working on a short-term assignment with no reasonable expectation to continued involvement with the larger project, and he handed over the requested plans without a contract or other limitations. Plaintiff worked on a short-term assignment with no legitimate expectations to continue involvement with the larger project. While Plaintiff was involved,

Falmouth <u>never</u> spoke to him about being awarded the final project, nor was there any talk of commissioning an independent review of his plans (as would have been required, in Falmouth's estimation, under the designer selection laws). When Plaintiff was asked at his deposition to pinpoint what Falmouth said to him regarding his being awarded the final project (as opposed to just the preliminaries), he said, "I can't recall anything specific in that regard." The simple truth is that any expectation Plaintiff had to continue onto the bigger project was based on assumption and conjecture; such expectation was unreasonable and unsupported.

Plaintiff submitted his work to Falmouth without express limitations and said nothing of any prohibition on sharing those plans. Nowhere in the record is there evidence that when he handed over his plans to Falmouth, he intended Falmouth to never share them.[1]

In light of the foregoing, Plaintiff could not have harbored any reasonable hopes of working on the next phase of the DPW project. Moreover, any claim Plaintiff might make that he did *not* provide a non-exclusive license does not stand up to reason. If Plaintiff were to make such an argument, then it would beg this question: What value would Plaintiff's preliminary plans have if not to aid Falmouth in completing the ultimate project? In this case, even in Plaintiff's plans were copied, it was only to complete the project for which Falmouth retained Plaintiff's services. It makes no sense that Falmouth would be unable to use Plaintiff's preliminary plans to consummate the subject project.

(ii)  **Indemnification Claimed by G-F**

G-F claims it is entitled to indemnification due to a letter drafted by G-F and endorsed by William Owen (DPW Director) that purports to show the Town's agreement to "hold Gannett Fleming harmless for any claims that Noah Greenberg Associates may bring against Gannett

---

[1] In fact, the opposite is true. With a letter dated February 7, 2000, Plaintiff delivered another copy of his plans and tells Falmouth, "You can reproduce these drawings ... *at your will*, providing only that our NGA Title block is included with all reproductions as a copyright for the design." (Emphasis added.) Although this letter may have been written in the context of acquiring funding, it still shows that Plaintiff had little predilection with his plans being copied for this project.

Fleming pertaining to" the Gifford Street project. This agreement is moot for two reasons: 1) Falmouth's delivery of Plaintiff's plans to G-F is immaterial because G-F, as an entity in the business of creating plans, should have known that using another architect's plans would lead to liability. That knowledge, coupled with G-F's actions is first-hand liability that does not fall within the parameters of any form of implied indemnification; nor does it come within the contract language promising indemnification as to claims arising from the other's "willful misconduct or negligent errors or omissions"; 2) G-F's reliance on the letter Mr. Owen endorsed is misplaced. Mr. Owen is the head of the DPW and has power to spend the monies allotted to his Department in a manner consistent with his budget. He does not have the power to bind the Town to an indemnification agreement involving facts leading to an impending lawsuit. Application of estoppel principles on these facts runs counter to express judicial as well as legislative policy. Authority for the management of the public funds is ultimately vested in Falmouth Town Meeting; Mr. Owen had no authority to bind Falmouth and any reliance G-F put thereon is unreasonable.

(2)     **The Facts Established by Pleadings or by Stipulations or Admissions of Counsel**

Falmouth will agree to all to the enumerated facts listed in section 2 of **Joint Pre-Trial Memorandum of Plaintiff Noah Greenberg and Defendant Gannett Fleming, Inc.**, save enumerated fact no. 2. In that regard, Falmouth will agree to the following statement:

In or about 1993, Falmouth hired either Noah Greenberg or the Robert Charles Group ("RCG") to create "preliminary drawings" for the DPW project.

(3)     **Contested Issues of Fact**

Whether Falmouth is entitled enjoyed an implied license to copy Plaintiff's plans.

Whether G-F copied Plaintiff's plans.

Whether Mr. Owen had the authority to agree on behalf of Falmouth to indemnify G-F.

**(4)     Any Jurisdictional Questions**

None.

**(5)     Any Questions Raised by Pending Motions**

None.

**(6)     Issues of Law, Including Evidentiary Questions, Together with Supporting Authority**

**(i)     The Legal Issue of Implied License**

Plaintiff cannot recover at all because he provided Falmouth with an implied license to copy his preliminary plans. While the touchstone for determining the presence of an implied license is intent, see Nelson-Salabes, Inc. v. Morningside Dev., LLC, 284 F.3d 505, 515 (4th Cir. 2002), the analysis turns on at least three factors: (1) whether the parties were engaged in a short-term discrete transaction as opposed to an ongoing relationship; (2) whether the creator utilized written contracts providing that copyrighted materials could only be used with the creator's future involvement or express permission; and (3) whether the creator's conduct during the creation or delivery of the copyrighted material indicated that use of the material without the creator's involvement or consent was permissible. Id. at 516. This is not an exhaustive list of factors to consider, but it provides useful guidance in determining the crucial question of intent.

The "intent" benchmark is an objective inquiry into facts that manifest such a contractual intent. See I.A.E., Inc. v. Shaver, 74 F.3d 768, 777 (7th Cir. 1996) (relevant intent "is not the parties' subjective intent but their outward manifestation of it"). As such, if an architect worked on a short-term assignment with no outward signs of expecting to continue involvement with the larger project, and handed over the requested

plans to a client without a contract or other limitations, it would not matter if he harbored private hopes of working on the next phase of the project. See id. This is the case here.

As discussed infra, Plaintiff worked on a short-term, preliminary assignment with no legitimate expectation to continue with the larger DPW project. There is a rebuttable presumption that municipalities that hire an architect for a feasability study will not hire that same architect for the final project. See M.G.L., c. 7, § 38H(I). Section 38H(I) reads, "Awarding authorities in cities and towns may allow a designer who conducted a feasibility study to continue with the design of a project, provided that they shall commission an independent review, by a knowledgeable and competent individual or business doing such work, of the feasibility designer's work to insure its reasonableness and its adequacy prior to allowing such a designer to continue on said project." (Emphasis added.) Plaintiff could not have harbored any reasonable hopes of working on the next phase of the DPW project. Moreover, any claim Plaintiff might make that he did not provide a non-exclusive license does not stand up to reason, infra.

(7)     **Any Requested Amendments to the Pleadings**

None.

(8)     **Any Additional Matters to Aid in the Disposition of the Action**

Falmouth requests two things: 1) a jury site visit; and 2) bifurcation of the indemnification issue from the root indemnification issue. Regarding the latter request, litigating those issues contemporaneously will confuse the jury and divert them from the primary issue - copyright infringement. Moreover, it will put forth the impression of two defendants pointing the finger at each other, which is not the case here. Falmouth, at least, does not claim G-F acted inappropriately in any way."

**(9)   The Probable Length of the Trial**

Falmouth agrees to the probable length suggested in Joint Pre-Trial Memorandum of Plaintiff Noah Greenberg and Defendant Gannett Fleming, Inc.

**(10)   The Names, Addresses and Telephone Numbers of Witnesses to be Called (Expert and Others) and Whether the Testimony of any Such Witness is Intended to be Presented by Deposition**

Falmouth incorporates by reference, as if fully set forth herein, its witness list in its Rule 26(a)(3) disclosures. In its 26(a)(3) disclosure, Falmouth identified five (5) proposed trial witnesses.

1. William Owen; Mr. Owen can be reached through undersigned counsel as he is Falmouth's former DPW Director.

2. Jeff Alberti; Mr. Alberti is an employee of Defendant Gannett Fleming, Inc. ("G-F") and can be reached through counsel for G-F.

3. Robert Whritenour, Jr.; Mr. Whritenour can be reached through undersigned counsel as he is Falmouth's Town Administrator.

4. Peter Boyer; Mr. Boyer can be reached through undersigned counsel as he is Falmouth's former Falmouth Town Administrator.

5. Heather Harper; Ms. Harper can be reached through undersigned counsel as she is Falmouth's Assistant Town Administrator.

**(11)   The Proposed Exhibits**

Falmouth incorporates by reference, as if fully set forth herein, its exhibit list in its Rule 26(a)(3) disclosures. In its 26(a)(3) disclosure, Falmouth identified 16 proposed trial exhibits.

**(12)   The Parties' Respective Positions on any Remaining Objections to the Evidence Identified in the Pre-Trial Disclosure Required by F.R.C.P. 26(a)(3)**

Falmouth propounded no objections to the exhibits suggested by Plaintiff or Gannett Fleming, Inc.

The Defendant,
TOWN OF FALMOUTH,
By its attorneys,

**PIERCE, DAVIS & PERRITANO, LLP**

/s/ Daniel G. Skrip
John J. Davis, BBO #115890
Daniel G. Skrip, BBO #629784
Ten Winthrop Square
Boston, MA 02110
(617) 350-0950

Dated: June 5, 2006

CERTIFICATE OF SERVICE

I, Daniel G. Skrip, hereby certify that on this 5th day of June, 2006, this document was served by e-mail on all counsel of record.

/s/ Daniel G. Skrip
Attorney Daniel G. Skrip